IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ROBERT L. WOODARD,                          :
                                            :
                    Petitioner,             :        CIVIL ACTION NO. 02-8543
                                            :
          v.                                :
                                            :
JOHN E. WETZEL, et al.,                     :
                                            :
                    Respondents.            :

## MEMORANDUM OPINION

Smith, J.                                                    March 21, 2023

In 1992, a jury sitting in the Court of Common Pleas of Philadelphia County found the petitioner guilty of rape and multiple counts of robbery, burglary, and possessing instruments of crime. For these crimes, the trial judge imposed a lengthy sentence of incarceration, which will keep the petitioner in a state correctional institution for a minimum of 48 years, in 1993. The petitioner unsuccessfully challenged this sentence and the underlying convictions on direct appeal and initial collateral review in the Pennsylvania state courts. Rather than proceeding to next file a federal habeas petition under 28 U.S.C. § 2254, the petitioner decided to file two additional post-conviction collateral relief petitions in the Court of Common Pleas, both of which were dismissed as untimely under Pennsylvania's Post Conviction Relief Act. The petitioner then filed a section 2254 habeas petition in this court in 2002, raising several claims of ineffective assistance of counsel. Another judge on this court denied and dismissed this petition as untimely in 2003 because it was filed well beyond the one-year limitations period provided in the Antiterrorism and Effective Death Penalty Act, and the petitioner was unable to benefit from statutory or equitable tolling to bring his petition inside the one-year limitations period.

Since the dismissal of his initial section 2254 petition in 2003, the petitioner has unsuccessfully attempted to obtain relief from his convictions and sentence through 16 post-conviction collateral relief petitions filed in the Pennsylvania state courts, a separately filed habeas petition under 28 U.S.C. § 2241 in this court, a petition seeking authorization from the Third Circuit Court of Appeals to file a second or successive habeas petition, and six motions for relief from the dismissal of his habeas petition pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.

Currently before the court is the petitioner's seventh Rule 60(b) motion in which he challenges the 2003 dismissal of his habeas petition on statute-of-limitations grounds. In this seventh motion, brought solely under Rule 60(b)(6), the petitioner claims that the Third Circuit's decisions in *Dennis v. Secretary, Pennsylvania Department of Corrections*, 834 F.3d 263 (3d Cir. 2016) and *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274 (3d Cir. 2021) constitute intervening changes in the law entitling him to relief. He also alleges that he learned in June 2022 that the two lead City of Philadelphia police detectives in his criminal case were exposed by organizations compiling lists of City of Philadelphia detectives who have been accused, charged, convicted, or disciplined for alleged actions of misconduct. He claims that under *Brady v. Maryland*, 373 U.S. 83 (1963), this information should have been turned over to the defense during his criminal case approximately 30 years ago, and the defense never received it.

After thoroughly reviewing the petitioner's seventh Rule 60(b) motion, the court will dismiss it because neither *Dennis* nor *Bracey* are material to the court's 2003 dismissal of his original habeas petition on timeliness grounds. In addition, even if those decisions were material to the court's dismissal, the petitioner falls far short of demonstrating eligibility for Rule 60(b)(6)

relief through his dubious *Brady*-violation claim. The court will also not issue a certificate of appealability.

## I.    PROCEDURAL HISTORY

The *pro se* petitioner, Robert L. Woodard ("Woodard"),[1] filed his initial petition for a writ of habeas corpus in this court on November 19, 2002.[2] *See* Doc. No. 1. In this petition, Woodard asserted claims of ineffective assistance of counsel. *See id.* The petition was assigned to the Honorable William H. Yohn, Jr., now retired, who referred it to Magistrate Judge Diane M. Welsh, now retired, for the preparation of a report and recommendation. *See* Doc. No. 3.

Magistrate Judge Welsh issued a report and recommendation on April 29, 2003, in which she recommended that Judge Yohn dismiss the petition as time-barred because Woodard filed it more than three years after the one-year period of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA") had run. *See* Apr. 29, 2003 R. & R. at 3–8 (citing 28 U.S.C. § 2244(d)(1)). Woodard filed objections to the report and recommendation on May 12, 2002, and May 22, 2003. *See* Doc. Nos. 13, 14. By order dated July 9, 2003, Judge Yohn overruled

---

[1] The court notes that some of the state court docket sheets incorrectly spell the petitioner's last name as "Woodward."

[2] Prior to filing this petition, a jury in the Court of Common Pleas of Philadelphia County had convicted Woodard of five counts of robbery, four counts of burglary, three counts of possessing an instrument of crime, and one count of rape on December 10, 1992. *See* Apr. 29, 2003 R. & R. at 1, Doc. No. 12; *see also Commonwealth v. Woodard*, No. 2604 EDA 2013, 2014 WL 10936681, at *1, 4 (Pa. Super. May 23, 2014) (discussing procedural history of Woodard's state court criminal proceedings). On March 29, 1993, the state court sentenced Woodard to an aggregate term of 48 to 96 years' imprisonment. *See* Apr. 29, 2003 R. & R. at 1; *Woodard*, 2014 WL 10936681, at *4.

Although Woodard filed a direct appeal, the Pennsylvania Superior Court affirmed his convictions and sentence on May 5, 1994. *See* Apr. 29, 2003 R. & R. at 2; *Woodard*, 2014 WL 10936681, at *4. Woodard did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania; instead, he began a series of collateral attacks on his conviction and sentence. *See Woodard*, 2014 WL 10936681, at *4. Proceeding *pro se*, Woodard filed his first petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46 ("PCRA") on July 5, 1994. *See* Apr. 29, 2003 R. & R. at 2. The state court appointed counsel to represent Woodard, and counsel then filed an amended PCRA petition on December 14, 1994. *See id.* The Court of Common Pleas denied this amended petition on September 9, 1996, and, after Woodard appealed, the Superior Court affirmed the trial court on May 14, 1998, and the Pennsylvania Supreme Court denied a petition for allowance of appeal on October 6, 1998. *See id.* Although Woodard subsequently filed additional PCRA petitions in 1998 and 2000, the Court of Common Pleas dismissed them as untimely in 1999 and 2002, respectively. *See id.* The Pennsylvania Superior Court affirmed both dismissals. *See id.* Thus, by the time Woodard filed his first habeas petition in this court, he had one PCRA petition denied, two PCRA petitions dismissed for being untimely, and all three adverse decisions were affirmed on appeal.

Woodard's objections, approved and adopted the report and recommendation, denied and dismissed the habeas petition, and determined that there was no ground to issue a certificate of appealability. *See* Doc. No. 15. Woodard appealed, but the Third Circuit denied his request for a certificate of appealability on December 11, 2003, *see* Doc. No. 20, and later denied his petition for a rehearing on January 26, 2004. Docket, *see Woodard v. Vaughn*, No. 03-3054 (3d Cir.).

Woodard then filed a federal habeas petition under 28 U.S.C. § 2241 on March 9, 2005.[3] *See Woodard v. Diguglielmo*, Civ. A. No. 05-1109 (E.D. Pa.). Judge Yohn referred this petition to Magistrate Judge Welsh for a report and recommendation on May 5, 2005. *See* May 5, 2005 Order, *Woodard v. Diguglielmo*, Civ. A. No. 05-1109 (E.D. Pa.), Doc. No. 3. On May 26, 2005, Magistrate Judge Welsh issued a report and recommendation that the court deny and dismiss the habeas petition because Woodard failed to assert a cognizable claim. *See* R. & R., *Woodard v. Diguglielmo*, Civ. A. No. 05-1109 (E.D. Pa.), Doc. No. 4. Although Woodard filed objections (and supplemental objections) to the report and recommendation, Judge Yohn entered an order on October 4, 2005, which overruled the objections, approved and adopted the report and recommendation, denied and dismissed the habeas petition, and declined issuing a certificate of appealability. *See Woodard v. Diguglielmo*, Civ. A. No. 05-1109 (E.D. Pa.), Doc. Nos. 5–7. Woodard filed a motion for reconsideration of Judge Yohn's order on October 24, 2005, which Judge Yohn denied via a memorandum and order on February 3, 2006. *See Woodard v. Diguglielmo*, Civ. A. No. 05-1109 (E.D. Pa.), Doc. Nos. 8, 11.

---

[3] In the petition, Woodard appeared to be attempting to have the court direct the Court of Common Pleas respond to a purported amended PCRA petition that he filed in 1996 while he was also represented by counsel. *See* Pet. Under 28 U.S.C. § 2241 for Writ of Habeas Corpus for Consideration of Constitutional Protections Against Unreasonable Inordinate Delay; Speedy Trial and Due Process Concerns, *Woodard v. Diguglielmo*, Civ. A. No. 05-1109 (E.D. Pa.) at 3, Doc. No. 1 ("Ten year [sic] have [sic] already passed since Petitioner Robert Woodard, acting pro se, filed his 1996 amended state PCRA motion . . ., and the Philadelphia County PCRA court has failed to act."). It is also possible that he was asserting that his PCRA counsel was ineffective in filing a defective amended PCRA petition. *See id.* at 2 ("PCRA counsel filed a defective amended PCRA petition and a memorandum of law.").

Although Woodard did not seek a certificate of appealability from the denial of his section 2241 habeas petition, he filed an application for leave to file a second or successive habeas petition with the Third Circuit on December 27, 2006. *See In re: Robert Woodard*, No. 06-5176 (3d Cir.). The Third Circuit denied his request for authorization to file a second or successive petition on January 17, 2007. *See id.*

Woodard filed his first motion under Federal Rule of Civil Procedure 60(b) on December 19, 2007, purportedly seeking relief from Judge Yohn's July 9, 2003 Order dismissing his first habeas petition.[4] *See* Doc. No. 21. After receiving a response from the respondents and a reply from Woodard, Judge Yohn denied the Rule 60(b) motion on July 30, 2008.[5] *See Woodard v. Vaughn, et al.*, Civ. A. No. 07-5316, Doc. Nos. 3–5. Woodard filed a motion for reconsideration on August 12, 2008, and Judge Yohn denied the motion on October 22, 2008. *See Woodard v. Vaughn, et al.*, Civ. A. No. 07-5316, Doc. Nos. 6–7.

Almost six years later, on May 12, 2014, Woodard filed a second motion under Rule 60(b)(6), which was docketed in this case.[6] *See* Doc. No. 26. On September 11, 2014, Judge Yohn filed a memorandum opinion and order denying this second Rule 60(b)(6) motion. *See* Doc. Nos. 30, 31. Woodard filed a motion for reconsideration of the denial order that the clerk of court docketed on September 26, 2014. *See* Doc. No. 32. Judge Yohn denied the motion for reconsideration via an order entered on October 1, 2014. *See* Doc. No. 34.

---

[4] The clerk of court docketed this Rule 60(b) motion in this action and at Civ. A. No. 07-5316.
[5] It does not appear that an order was entered in the instant civil action denying the motion as the order was only docketed in Civ. A. No. 07-5316.
[6] While the clerk of court did not docket the motion until May 21, 2014, it appears that under the prisoner mailbox rule, Woodard submitted the motion to prison officials on May 12, 2014. Doc. No. 26 at 33. As such, the court uses May 12, 2014 as the filing date. *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (concluding that a *pro se* prisoner's notice of appeal was considered filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk"); *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (explaining that "a pro se prisoner's . . . petition is deemed filed at the moment he delivers it to prison officials for mailing").

Woodard filed a third "Motion to Vacate Order Denying Habeas Corpus Relief Pursuant to Fed.R.Civ.Proc. Rule 60(b)(6)" on or about November 12, 2015. Doc. No. 34. On November 17, 2015, then-Chief Judge Petrese B. Tucker reassigned this case from Judge Yohn's calendar to the undersigned's calendar. This court reviewed Woodard's third Rule 60(b)(6) motion and determined that it was an unauthorized second or successive habeas petition and, as such, the court denied the motion on February 29, 2016. *See* Doc. Nos. 36, 37.

On June 9, 2016, the clerk of court docketed a fourth Rule 60(b)(6) motion from Woodard. *See* Doc. No. 38. This court denied the motion via an order entered on July 19, 2016. *See* Doc. No. 39. Woodard then filed a fifth Rule 60(b)(6) motion, which the Clerk of Court docketed on June 15, 2018.[7] Doc. No. 40. This motion was almost identical to his fourth Rule 60(b)(6) motion. *Compare* Doc. No. 38, *with* Doc. No. 40. The court entered a memorandum opinion and order on September 6, 2018, which denied the fifth Rule 60(b)(6) motion because it was (yet again) actually an unauthorized second or successive habeas petition. Doc. Nos. 43, 44.

On July 22, 2019, the clerk of court docketed Woodard's sixth Rule 60(b) motion for relief.[8] *See* Doc. No. 47. On March 10, 2020, the court entered a memorandum opinion and order

---

[7] After looking at the state-court docket entries for one of Woodard's criminal matters related to this habeas action, namely No. CP-51-CR-220171-1992, it shows that the Court of Common Pleas of Philadelphia County entered an order on November 21, 2017, dismissing Woodard's **14th** PCRA petition. *See* Docket, *Commonwealth v. Woodward*, No. CP-51-CR-220171-1992 (Philadelphia Ct. Com. Pl.), *available at* https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-51-CR-0220171-1992 (last accessed March 9, 2020). It appears that Woodard filed a motion for reconsideration, which the Court of Common Pleas denied on January 3, 2018. *Id.* Woodard appealed, and the Superior Court quashed the appeal on October 31, 2018. *Id.*

    Woodard filed a **15th** PCRA petition in late 2018/early 2019. *Id.* Although Woodard amended his 15th PCRA petition in March 2019, the Court of Common Pleas dismissed it on April 8, 2019. *Id.* Woodard filed multiple notices of appeal to the Superior Court, and it appears that at least one of those appeals is still awaiting disposition with the Superior Court. *Id.*

    Woodard also filed a **16th** PCRA petition on June 18, 2020. *See Commonwealth v. Woodard*, Nos. 2511 EDA 2021, 2512 EDA 2021, 2513 EDA 2021, 2514 EDA 2021, 2023 WL 1950986, at *1 (Pa. Super. Feb. 13, 2023). This "serial petition" was dismissed, and the dismissal was upheld on appeal. *See id.* at *1–3.

[8] In the motion, Woodard appeared to argue that the Third Circuit Court of Appeals' decision in *Reeves v. Fayette*, 897 F.3d 154 (2018), is an intervening change in controlling law, entitling him to relief. *See* Mot. to Vacate Order Denying Habeas Corpus Relief Pursuant to Fed. R. Civ. Proc. 60(b)(6) ("Mot.") at 1, 21. In *Reeves*, the Third Circuit "resolved the meaning of new evidence in the actual innocence context." 897 F.3d at 163. The court concluded that "when a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the

which construed the Rule 60(b)(6) motion as a second or successive habeas petition and dismissed it for lack of subject-matter jurisdiction because the Third Circuit had not authorized Woodard to file a second or successive habeas petition. *See* Doc. Nos. 48, 49.

Slightly more than three years to the day after the denial of his last Rule 60(b) motion, Woodard has filed his seventh Rule 60(b) motion in this court. *See* Doc. No. 50. Although initial parts of the motion are difficult to understand, it appears that Woodard seeks to have the court vacate Judge Yohn's July 9, 2003 Order denying his habeas petition as time-barred because of the Third Circuit's decisions in *Dennis v. Secretary, Pennsylvania Department of Corrections*, 834 F.3d 263 (3d Cir. 2016) and *Bracey v. Superintendent Rockview SCI*, 986 F.3d 274 (3d Cir. 2021). *See* Mot. to Vacate Order Denying Habeas Corpus Relief Pursuant to Fed. R. Civ. P. 60(b)(6) ("R. 60 Mot.") at ECF p. 1, Doc. No. 50; *id.* at ECF p. 3 ("Petitioner seeks relief from the judgement [sic] denying his habeas petition, characterizing *Bracey*'s change in relevant decisional law as an extraordinary circumstance to justify relief under" Rule 60(b)(6)."). Woodard asserts that *Dennis* and *Bracey* changed the decisional law in a manner that would qualify as an exceptional circumstance warranting relief under Rule 60(b)(6). Woodard also contends that

> the nature of the change in decisional law must be weighed appropriately in the analysis of pertinent equitable factors. [*Bracey*] implicates the foundational principle of avoiding the conviction of an innocent man and attempts to prevent such a mistake through the fundamental miscarriage of justice exception. If [I] can make the required credible showing of actual innocence to avail himself of the

fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the [*Schlup v. Delo*, 513 U.S. 298 (1995)] actual innocence gateway." *Id.* at 164.

Woodard also appeared to argue that he is entitled to relief under *McQuiggin v. Perkins*, 569 U.S. 383 (2013), because the Supreme Court determined that a proven claim of actual innocence could allow a habeas petitioner to bypass a statute of limitations bar. *See* Mot. at 3–5. Woodard contends that the court should reopen his previously dismissed habeas petition to "allow for counseled brief on [his] constructive denial of counsel claim/not ineffective assistance of counsel, willfully prosecutorail [sic] misconduct, cause and prejudice, and miscarriage of justice." *Id.* at 22. He further asserted that he was "never given the chance to prove . . . that he was willfully denied his right to his court appointed counsel . . . during all of it's [sic] court-ordered pretrial hearings and lineups" in the state court criminal proceedings. *Id.* at 23. He also contended that the assistant district attorney failed "to disclose relevant Brady material regarding these uncounseled proceedings." *Id.*

The court notes that although Woodard called these proceedings "uncounseled," he made clear in his motion that "standby counsel" was present at each of the proceedings to which he is referring. *Id.* at 6–7, 11–13.

fundamental miscarriage of justice exception had [*Bracey*] been decided when his petition was dismissed, equitable analysis would weigh heavily in favor of deeming *Bracey*'s change in law, as applied to [my] case, an exceptional circumstance justifying relief. While [my] ability to show actual innocence is not case determinative in that the District Court must weigh all of the equitable factors as guided by precedent, the nature of the change in law cannot be divorced from that analysis.

*Id.* at ECF p. 4.

In addition to his references to *Dennis* and *Bracey*, Woodard alleges that while his appeal from the Court of Common Pleas' dismissal of his 16th PCRA petition was pending before the Superior Court, he

learned of Detectives Paul Cassidy and Steven Ratka's credibility issues on June 22, 2022, when a report that first appeared, in a Philadelphia magazine article by the Right To Be Free Foundation in partnership with the Philadelphia Police Transparency Project, revealed that Detectives Paul Cassidy and Steven Ratka was [sic] on the list of Philadelphia Detectives that have been accused, charged, convicted, and/or "disciplined" for alleged actions of misconduct.

*Id.* at ECF p. 8 (citations omitted). Woodard states that Detectives Cassidy and Ratka were the lead detectives in his criminal case. *See id.* Woodard claims that (1) the evidence of the detectives' misconduct was unavailable at the time of his trial, (2) despite knowing about corruption allegations against the detectives, the Commonwealth did not share this information with Woodard or his counsel prior to 2022, and (3) the evidence of the detectives' conduct could not have been obtained at the time of his trial, even through the exercise of due diligence. *See id.*

## II.   DISCUSSION

As indicated above, Woodard brings the instant motion under Rule 60(b) of the Federal Rules of Civil Procedure. Rule 60(b) provides as follows:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

**(1)** mistake, inadvertence, surprise, or excusable neglect;

**(2)** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

**(3)** fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

**(4)** the judgment is void;

**(5)** the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

**(6)** any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Rule 60(c), in turn, provides the timing within which a Rule 60(b) motion must be made: either within a year of the entry of the order or judgment from which the motion seeks relief if the motion is made pursuant to Rule 60(b)(1), (2), or (3), or "within a reasonable time" if the motion is made under any other provision. Fed. R. Civ. P. 60(c).

Because this is a federal habeas action, the court must evaluate whether Woodard's Rule 60(b)(6) motion is properly characterized as an unauthorized second or successive habeas petition. AEDPA mandates that before a state prisoner may file a second or successive habeas petition in which he challenges a judgment of sentence that he previously challenged in a federal habeas action, he must first obtain an order from the appropriate court of appeals authorizing the district court to consider the application. *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."); *see, e.g.*, *Magwood v. Patterson*, 561 U.S. 320, 330–31 (2010) ("If an application [for a writ of habeas corpus] is 'second or successive,' the petitioner must obtain leave from the court of appeals before filing it with the district court."); *United States v. Winkelman*, 746 F.3d 134, 135 (3d Cir. 2014) (interpreting motion to recall mandate and reinstate direct appeals as

successive habeas motion); *In re Pendleton*, 732 F.3d 280, 282 (3d Cir. 2013) (per curiam) (addressing requests for authorization to file successive habeas petition under section 2254 to raise claims under *Miller v. Alabama*, 567 U.S. 460 (2012)). Importantly, AEDPA's allocation of "gatekeeping" responsibilities to the courts of appeals have divested district courts of jurisdiction over habeas applications that are second or successive. *See, e.g.*, *Burton v. Stewart*, 549 U.S. 147, 157 (2007) ("The long and short of it is that [the petitioner] neither sought nor received authorization from the Court of Appeals before filing his . . . 'second or successive' petition challenging his custody, and so the District Court was without jurisdiction to entertain it."). A habeas petitioner cannot avoid AEDPA's second or successive gatekeeping mechanism by raising habeas claims in a filing that he designates as a Rule 60(b) motion. *See Sutton v. Commonwealth*, Civ. A. No. 17-109 Erie, 2018 WL 4599825, at *2 (W.D. Pa. Sept. 25, 2018) (explaining that "the Petitioner could not avoid AEDPA's second or successive gatekeeping mechanism[,] by simply designating a filing as a Rule 60(b) motion" (internal quotation marks and citations omitted)); Brian R. Means, FEDERAL HABEAS MANUAL § 11:42, Westlaw (database updated May 2019) (explaining that "a [habeas] petitioner is not permitted to circumvent AEDPA's second or successive petition requirements simply by labeling the petition or motion as something other than what it is").

The starting point for analyzing whether the instant motion is actually a second or successive habeas petition is *Gonzalez v. Crosby*, 545 U.S. 524 (2005). In *Gonzalez*, the United States Supreme Court addressed the circumstances in which the use of Rule 60(b) is "inconsistent with" AEDPA's second or successive petition requirements and, consequently, unavailable to a state prisoner seeking habeas relief.[9] *See* 545 U.S. at 526 (addressing "whether, in a [section 2254]

---

[9] Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254 only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules.'" *Gonzalez*,

habeas case, such motions are subject to the additional restrictions that apply to 'second or successive' habeas corpus petitions under [AEDPA] . . . ."). The Court explained that courts must construe a Rule 60(b) motion as a "second or successive habeas corpus application" when it advances "one or more 'claims.'" *Id.* at 531–32 (quoting 28 U.S.C. § 2244(b)(1), (2)). The Court observed that "[i]n most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple. A motion that seeks to add a new ground for relief . . . will of course qualify." *Id.* at 532. In addition, the Court instructed that a petitioner is advancing a habeas claim in a Rule 60(b) motion if he "attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief." *Id.* (footnote omitted). Similarly, a motion seeking to present newly discovered evidence in support of a claim that the court previously denied represents a habeas claim. *Id.* In contrast, a motion is a "true" Rule 60(b) motion if it challenges a procedural ruling made by the district court that precluded a merits determination of the habeas petition, or "challenges a defect in the integrity of the federal habeas proceedings," such as an assertion that the opposing party committed fraud upon the court. *Id.* at 532, n.4.

Here, Woodard purports to seek Rule 60(b) relief because *Dennis* and *Bracey* constituted a change in the decisional law material to the July 2003 denial of his original habeas petition. Concerning *Dennis* and *Bracey*:

> In *Dennis*, the en banc Third Circuit considered whether the district court had erred in granting state habeas relief to a petitioner who claimed that the Pennsylvania courts had denied him post-conviction relief based on an unreasonable application of *Brady*. 834 F.3d at 269. In the course of its opinion, the court considered the extent to which a criminal defendant must exercise due diligence in seeking out potentially exculpatory evidence, and it made clear that the

---

545 U.S. at 529 (footnote omitted; alteration in original) (quoting now-Rule 12 of the Rules Governing Section 2254 Cases).

prosecution's "duty to disclose under *Brady* is absolute," *id.* at 290 (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)), and a defendant has no obligation "'to scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed,'" *id.* (quoting *Banks v. Dretke*, 540 U.S. 668, 695 (2004)). Recognizing that it had occasionally suggested that the government was "'not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he [could] obtain himself,'" the court acknowledged that its precedent was "inconsistent and could easily confuse." *Id.* at 291-92 (quoting *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984)). It thus took the opportunity to clarify that "[t]o the extent that we have considered defense counsel's purported obligation to exercise due diligence to excuse the government's non-disclosure of material exculpatory evidence, we reject that concept as an unwarranted dilution of *Brady*'s clear mandate." *Id.* at 293.

Subsequently, in *Bracey*, the Third Circuit considered the district court's denial of a Rule 60(b) motion that sought reconsideration of a § 2254 habeas order dismissing a petitioner's *Brady* claims as untimely pursuant to the § 2244(d)(1)(D) of the Antiterrorism and Effective Death Penalty Act. 986 F.3d at 278; *see* 28 U.S.C. § 2244(d)(1)(D) (requiring a state habeas petition to be filed within one year of "the date on which the factual predicate of [a] claim . . . could have been discovered through the exercise of due diligence"). In finding the *Brady* claims untimely, the district court had reasoned that regardless of the prosecution's alleged lack of full disclosure, the petitioner had an obligation to exercise due diligence in seeking out matters of public record and thus, should have discovered the withheld evidence more than one year before he filed his habeas petition. *Bracey*, 986 F.3d at 280. The *Bracey* petitioner argued in his Rule 60(b) motion that, in light of *Dennis*, this analysis was in error because "there is no due diligence requir[e]ment under *Brady* for defendants to discover impeachment material" and thus, "§ 2244(d)(1)(D) . . . does not require petitioners . . . to undertake efforts to find exculpatory material." *Id.* at 280-81 (first alteration in original) (quotation omitted).

On appeal, the Third Circuit in *Bracey* concluded that the district court had erred, stating that *Dennis* had "effected a material change in Circuit law with respect to the reasonable expectations of a Brady claimant." *Id.* at 279. It elaborated that "[w]hile [it] had previously suggested that defendants had to search for exculpatory evidence themselves, *Dennis* made clear that a defendant can reasonably expect—and is entitled to presume—that the government fulfilled its *Brady* obligations because the prosecution's duty to disclose is absolute and in no way hinges on efforts by the defense." *Id.* "By altering the factual predicate and baseline expectations for *Brady* claims, *Dennis* correspondingly changed what § 2244(d)(1)(D)'s 'due diligence' requirement demands of *Brady* claimants." *Id.* The Third Circuit therefore concluded that the district court had abused its discretion by denying the Rule 60(b) motion without even mentioning *Dennis* and, instead, should have considered not only *Dennis*'s impact on its prior timeliness analysis, but also the other *Cox*[ *v. Horn*, 757 F.3d 113, 119 (3d Cir. 2014)] factors that could support the petitioner's claim of extraordinary circumstances under Rule 60(b)(6).

As a result, the Third Circuit remanded the case to the district court to weigh the equitable factors in *Cox* and to engage in any additional factfinding that was necessary to do so. *Id.* at 297.

*White v. Vaughn*, Civ. A. No. 94-6598, 2022 WL 4080760, at *4–5 (E.D. Pa. Sept. 6, 2022) (all

alterations except final alteration in original).

Following *Bracey*, when faced with Rule 60(b) motions in which the movant is seeking

relief based on an alleged intervening change in the law, the district court

must address three issues: First, [the court] ask[s] whether the asserted change is material to the basis on which the district court initially denied habeas relief. *See Norris v. Brooks*, 794 F.3d 401, 404–05 (3d Cir. 2015). If it is, [the court] then evaluate[s] whether the district court analyzed the petitioner's Rule 60(b) motion in accordance with a multifactor analysis we outlined in *Cox*, which includes, among other things, a consideration of the effect of the change in decisional law and an assessment of "the merits of [the] petitioner's underlying . . . claim." 757 F.3d at 124. Finally, we determine the proper disposition on appeal: If the District Court undertook the requisite multifactor analysis, we review the merits of its ruling for abuse of discretion, *id.* at 118, but if it did not engage in that analysis or "we cannot determine from what it wrote whether the Court considered [the relevant] factors," *id.* at 120, then the District Court per se abused its discretion and we ordinarily remand, because "[t]he grant or denial of a Rule 60(b)(6) motion is an equitable matter left, in the first instance, to the discretion of a district court," *id.* at 124.

*Bracey*, 986 F.3d at 284.

In this case, Woodard's Rule 60(b)(6) motion fails at the first level of *Bracey*'s procedure

because the asserted changes in decisional law are immaterial to the basis upon which Judge Yohn

denied habeas relief. Woodard's initial habeas petition included claims for ineffective assistance

of counsel, and Judge Yohn denied the petition because: (1) it was facially untimely under 28

U.S.C. § 2244(d)(1)(A); (2) Woodard's second and third PCRA petitions, which were dismissed

as untimely by the state court, did not operate to toll the limitations period as allowed by section

2244(d)(2) because they were not "properly filed" in the state court; (3) Woodard failed to show

that he was entitled to a later start date under section 2244(d)(1)(B) for purported government

interference; and (4) Woodard failed to show that equitable tolling was warranted. *See* July 9, 2003 Order at 1, n.1. Woodard did not raise a *Brady* claim in his original petition, and "*Bracey* specifically involved the timeliness of claims brought under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)."[10] *Jones v. Vaughn*, No. 2:99-cv-4718, 2022 WL 131257, at *3 (E.D. Pa. Jan. 14, 2022). As for *Dennis*, it addressed the government's duty under *Brady*. *See Bracey*, 986 F.3d at 289 (explaining that, in *Dennis*, "we confronted the question whether the government's duty to disclose could be excused where the evidence in question was assertedly available in public records").[11] At bottom, neither *Dennis* nor *Bracey* are applicable to Woodard's original habeas petition. Accordingly, the court will deny Woodard's Rule 60(b)(6) motion.[12]

---

[10] While ultimately irrelevant to the court's decision on his Rule 60(b)(6) motion, Woodard articulates certain arguments and references *Bracey* in support of those arguments even though it does not appear that *Bracey* supports his arguments. *See, e.g.*, R. 60 Mot. at ECF p. 4

[11] As to the government's duty under *Brady*, the Third Circuit concluded that

> [t]here is no "affirmative due diligence duty of defense counsel as part of *Brady*" and "no support [for] the notion that defendants must scavenge for hints of undisclosed *Brady* material." [*Dennis*, 834 F.3d] at 290 (quoting *Banks*, 540 U.S. at 695, 124 S.Ct. 1256). Rather, "the duty to disclose under *Brady* is absolute—it does not depend on defense counsel's actions." *Id.* Consequently, the defense "is entitled to presume that prosecutors have 'discharged their official duties'" by sharing all material exculpatory information in their possession, *id.* (quoting *Banks*, 540 U.S. at 696, 124 S.Ct. 1256), and the defense's diligence in seeking out exculpatory material on its own "plays no role in the Brady analysis," *id.* at 291.

*Bracey*, 986 F.3d at 289.

[12] Even if *Dennis* or *Bracey* were somehow material to the dismissal of Woodard's original habeas petition, he has not demonstrated that he is entitled to relief under Rule 60(b)(6). The court recognizes that, after concluding that an intervening change in the law was material to the dismissal of the original petition, there are several factors that the court would have to consider when deciding to grant relief under Rule 60(b)(6). *See Cox*, 757 F.3d at 122–26. A "key factor" is "the merits of a petitioner's underlying . . . claim." *Bracey*, 986 F.3d at 295 (quoting *Cox*, 757 F.3d at 124).

Here, Woodard's *Brady* claim in the motion is undeniably meritless. Presuming that the source of information Woodard is using is reliable and accurate, there is no indication  in that information about whether Detective Cassidy or Detective Ratka committed misconduct. *See* R. 60 Mot. at ECF pp. 79–82. Instead, Detective Cassidy is on a list of Philadelphia detectives who have been "accused, charged, convicted, and/or disciplined" for alleged actions of misconduct. *See id.* at ECF p. 81. Detective Ratka is on a list of "law enforcement and judiciary officers from the county [sic] of Philadelphia" who "have ***present and/or pending*** criminal investigations and/or prosecutions and/or disciplinary actions ***pending*** against them for violations of the law and/or their official duties in criminal cases." *Id.* at ECF p. 82 (emphasis added). Neither of these lists indicate that either detective has committed misconduct.

Even if the information Woodard attaches to his motion did show that either or both detectives have been found guilty of misconduct (via conviction or discipline), the information is undated. Woodard was tried and convicted over 30 years ago. Any misconduct committed by these detectives would have to connect in some manner to Woodard's underlying criminal case for it to be relevant. Woodard does not plausibly identify any connection between

### III.    CONCLUSION

As explained above, Woodard has not come close to showing that he is entitled to relief under Rule 60(b)(6) based on a change in decisional law due to *Bracey* and *Dennis*. As such, the court will deny his seventh Rule 60(b) motion. The court also finds that there is no cause to issue a certificate of appealability.[13]

---

misconduct by the detectives and his criminal case, other than the involvement of the detectives in his case. Instead, his allegations are pure conjecture.

For instance, when Woodard claims that evidence of the detectives' misconduct (ignoring, for a moment, the lack of evidence of misconduct) was unavailable at the time of his trial, *see* R. 60 Mot. at ECF p. 8, it very well could have been considering the detectives would have had approximately 29 years after Woodard's sentence to commit that misconduct. In addition, Woodard states that the prosecutors in his criminal trial "were aware of corruption allegations" against the detectives and yet, did not inform the defense. *See id.* There is nothing about the detectives' names on those undated lists that would remotely show that prosecutors during Woodard's criminal proceedings were aware of these detectives' purported corruption, just as those lists do not show any actual corruption. *See id.* at ECF pp. 81, 82. Overall, Woodard is attempting an extreme contortion of information he found in June 2022, which **at best** shows that Detective Ratka has been alleged of misconduct at some unknown time and that Detective Cassidy was accused, charged, convicted or disciplined for misconduct at some unknown time, to create a purported *Brady* violation relative to his criminal proceedings approximately 30 years ago. Since a district court "need not provide a remedy under 60(b)(6) for claims of dubious merit," *Cox*, 757 F.3d at 125, this court has no hesitation in concluding that Woodard would not be entitled to relief on his Rule 60(b)(6) motion here even if *Bracey* or *Dennis* were material to the dismissal of his original habeas petition. This is a very poor attempt to manufacture a *Brady* violation

[13] Since the court is denying Woodard's Rule 60(b)(6), the court must determine whether to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(1) ("Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court...."); *Bracey*, 986 F.3d at 282 ("[A certificate of appealability] is required when a petitioner appeals the denial of a Rule 60(b) motion seeking reconsideration of a dismissal of a habeas petition, even if that dismissal was on procedural grounds."). This court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). With respect to whether to issue a certificate of appealability,

> and the district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, the court finds that reasonable jurists would not find it debatable whether Woodard's Rule 60(b)(6) motion states a valid claim of the denial of a constitutional right or whether the court was correct in determining that neither *Dennis* nor *Bracey* were material to the denial of Woodard's original habeas petition or, even if they were, that *Woodard* has failed to meet the "high threshold for 60(b) relief." *Bracey*, 986 F.3d at 295. As such, the court declines to issue a certificate of appealability.

The court will enter a separate order.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.